712 So.2d 1162 (1998)
James B. SWINDELL, as Personal Representative of the Estate of Park T. Swindell, a/k/a P.T. Swindell, Appellant/Cross-Appellee,
v.
Catherine S. CROWSON, a/k/a C.S. Crowson, Appellee/Cross-Appellant.
No. 96-05130.
District Court of Appeal of Florida, Second District.
June 12, 1998.
*1163 John W. Frost, II and John Marc Tamayo of Frost, O'Toole & Saunders, P.A., Bartow, for Appellant/Cross-Appellee.
William S. Blakeman, Bartow, for Appellee/Cross-Appellant.
PER CURIAM.
James B. Swindell, as personal representative of the estate of Park T. Swindell, challenges a final judgment entered against the estate in favor of Catherine Crowson for unjust enrichment, as well as orders denying his two motions to dismiss for failure to prosecute. Ms. Crowson cross-appeals the trial court's failure to award prejudgment interest. We affirm the trial court's orders denying the motions to dismiss. We reverse the final judgment in favor of Ms. Crowson because the record is devoid of substantial competent evidence to support the award of damages for unjust enrichment. Our reversal moots the cross-appeal.
A contract implied in law is an obligation imposed by law to prevent unjust enrichment. The essential elements that must be proven under a theory of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. Ruck Brothers Brick v. Kellogg & Kimsey, 668 So.2d 205 (Fla. 2d DCA 1995); Rite-Way Painting & Plastering v. Tetor, 582 So.2d 15 (Fla. 2d DCA 1991). There is no evidence from which the trial court could have concluded that the defendant appreciated the benefit or that retention of any benefit by the defendant without compensation would be unjust.
Ms. Crowson testified that she had done bookkeeping, in the form of check writing, bill paying and keeping a ledger for Park T. Swindell, the decedent, for a ten-year period prior to his death. She also said she made trips to his residence to get checks signed and did other errands on his behalf. During this period Ms. Crowson worked for attorney George Coward as a legal secretary. Mr. Coward testified that he observed Ms. Crowson perform these nonlegal chores for Park T. Swindell. He further stated that Ms. Crowson was free to do nonlegal work for his clients in his office and that she had his permission to bill the clients.
Ms. Crowson testified she expected to be paid for her services yet no bills were submitted to the decedent prior to this claim against his estate. Moreover, at no time during that period did Ms. Crowson ever make a memorandum indicating the frequency of these chores or the amount of time spent at each task. Yet, at trial and during her deposition she stated she spent forty-five minutes a day initially performing these services, with the frequency decreasing when Park T. Swindell moved into a nursing care type facility. She claimed $7,850.50 was owed for the services, but she could not say how much was owed for each year.[1]
*1164 This evidence falls short of demonstrating that the decedent appreciated the benefit and that it would be inequitable for him to retain the benefits without paying for them. The mere fact that the decedent's son may have asked Ms. Crowson about payment does not demonstrate the appreciation of the benefit by the decedent.
Additionally, the damages in this case are highly speculative. Damages cannot be based on speculation, conjecture or guesswork. Florida Outdoor v. Stewart, 318 So.2d 414 (Fla. 2d DCA 1975). Ms. Crowson had no documents or other evidence to support her assertion that she worked forty-five minutes a day for the decedent. She admitted she guessed or estimated both the amount of time spent at these chores as well as the hourly rate. She would not give the court any reasonable determination by year as to the amount of time and value of her services. Ms. Crowson swore under oath in her statement of claim that the $7,850.50 covered the period from 1980 to 1989. Yet she now argues this amount only covers 1987, 1988, and a part of 1989. On the evidence presented, it is impossible to determine what is included in the final judgment figure of $7,850.50.
We, therefore, reverse the final judgment awarding Ms. Crowson $7,850.50 for unjust enrichment.
FULMER and QUINCE, JJ., concur.
THREADGILL, A.C.J., concurs in part; dissents in part.
THREADGILL, Acting Chief Judge, dissenting.
I concur in the affirmance of the trial court's denial of the motions to dismiss. I disagree with the majority ruling that the record is devoid of substantial, competent evidence to support the award of damages for unjust enrichment and, therefore, respectfully dissent.
Courts will find an implied contract of employment where services were performed under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid. See Aldebot v. Story, 534 So.2d 1216 (Fla. 3d DCA 1988). In Aldebot, the court cited the rule set forth in Yeats v. Moody, 128 Fla. 658, 661, 175 So. 719, 720 (1937), as follows:
It is well settled that where services are rendered by one person for another which are knowingly and voluntarily accepted, without more, the law presumes that such services are given and received in the expectation of being paid for, and will imply a promise to pay what they are reasonably worth.
534 So.2d at 1217. This rule is still good law and applies to this case.
At this nonjury trial, George Coward, an attorney who represented Park T. Swindell before his death, testified that he employed Ms. Crowson as a legal secretary and office manager during the relevant time period in this case. She performed bookkeeping services for his office as well as for various clients, estates, and trusts. Mr. Coward testified that the decedent first met Ms. Crowson at Mr. Coward's office. Mr. Coward had told the decedent that he would not provide bookkeeping services for him. Mr. Coward later observed Ms. Crowson providing nonlegal bookkeeping services for the decedent, including paying his bills, making bank deposits, and working on his records. Mr. Coward went with Ms. Crowson to various nursing homes to obtain the decedent's signature before he died. The decedent was frequently in Mr. Coward's office to meet with Ms. Crowson. Mr. Coward did not bill the decedent for Ms. Crowson's services to the decedent, nor did he pay Ms. Crowson for such services. Mr. Coward testified that Ms. Crowson was free to do nonlegal work for his clients and that she had his permission to bill them directly for her services.
Ms. Crowson testified that she reconciled the decedent's bank statements, filled out checks for him to sign to pay his bills, made insurance claims, shopped for him, helped arrange for sitters when he later needed *1165 extra assistance, and took care of his automobile. Ms. Crowson testified that she expected to be paid for her services to Mr. Swindell. She did not submit a bill to Mr. Swindell at the time because she thought he needed his money to pay increasing medical expenses. She testified that she spoke with him almost daily. She testified that she met with him several times a week and that she performed bookkeeping services five days a week for at least forty-five minutes a day.
Ms. Crowson estimated the value of her services at $16.50 per hour. Steve Hamic, a certified public accountant, testified that the value of Ms. Crowson's services was $15.00 to $20.00 per hour. Ms. Crowson testified that Mr. Coward paid her $10.50 per hour to do similar bookkeeping work for him. When the number of hours worked by Ms. Crowson on Mr. Swindell's behalf between November 1985 and November 1989 are multiplied by $10.00 per hour, the resulting amount is $7,800.00. This would support the amount of damages awarded by the trial court.
In addition to the testimony, the record contains exhibits including: bank statements showing deposits Ms. Crowson claimed to have made for the decedent; checks and deposits she made out for him to sign; ledger sheets she had prepared; and tax documents and notes reflecting that she had spoken to other people on his behalf. Mr. James T. Swindell, the personal representative of his father's estate, asked Ms. Crowson before and after his father's death if she had ever been paid for her services.
I agree with the trial court that the above evidence was sufficient to demonstrate that the decedent knowingly accepted, retained, and appreciated the benefit of Ms. Crowson's services under circumstances in which it would be inequitable for his estate to retain such benefit without paying the value thereof. See Rite-Way Painting & Plastering, Inc. v. Tetor, 582 So.2d 15 (Fla. 2d DCA 1991). The fact that Ms. Crowson did not bill the decedent or keep a memorandum documenting the time she spent performing services for him is not, in my opinion, determinative. I have considered the evidence, and I agree that the essential elements of unjust enrichment were, in fact, established. See Id. The evidence does not indicate to me, that the decedent expected free services and found a willing volunteer. Rather, it raises a fair presumption that Ms. Crowson was to be paid for her services.
I would also affirm the denial of prejudgment interest, which Ms. Crowson challenges in her cross-appeal, because her damages were not liquidated as of a date certain under the peculiar circumstances of this case. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985).
Accordingly, I would affirm the final judgment in all respects.
NOTES
[1] Ms. Crowson filed a claim with the probate court and sued for monies she alleged were owed for the entire ten-year period. However, the trial court ruled her claim was limited to the four-year period of November 25, 1985 to November 25, 1989. That ruling is not at issue in this appeal.