WALLACE, Judge.
 

 CTX Mortgage Company, LLC (the Lender), appeals a final judgment that awarded Advantage Builders of America, Inc. (the Builder), an equitable lien on undisbursed construction funds held by the Lender. When Kremlin Yee (the Owner) refused to proceed with a required end closing on the completed project, the Lender retained the final construction draw in accordance with the parties’ written agreement. Later, the Lender sold the residence that was the security for the construction loan and sustained a loss substantially exceeding the amount of the re-tainage. Because the parties’ written agreement authorized the Lender to retain the final construction draw if the Owner did not proceed with the end closing, the Lender’s retention of the undisbursed construction funds was not inequitable under the circumstances of this case. Thus the Builder failed to prove the unjust enrichment necessary to establish its equitable lien claim. For this reason, we reverse the final judgment imposing the equitable lien on the undisbursed construction funds and remand for the entry of judgment in favor of the Lender.
 

 I. THE FACTS
 

 The pertinent events in this case took place against the backdrop of the recent boom and bust of the housing market in Southwest Florida. In February 2006, at the height of the real estate bubble, the Builder entered into a construction contract with the Owner to build a single-family residence in Cape Coral, Florida. The contract price to build the residence was $242,900. The Owner was required to pay an additional $99,900 to acquire the lot for the residence.
 

 The Owner obtained financing from the Lender for the purchase of the building lot and for the cost of constructing the residence from the Lender. Closing costs and settlement charges brought the Owner’s total cost for the project to approximately $361,000. The Lender provided $357,300 in funding, or almost one hundred percent of the Owner’s acquisition costs. The Owner’s obligation to the Lender was memorialized in a note secured by a mortgage on the property.
 

 The type of loan provided by the Lender to the Owner may be referred to as a “construction/modification only” loan. As the Builder explains, “The construction/modification loan program with [the Lender] required two closings for each project, a front end closing to purchase the lot and allocate construction funds and then an end closing once construction was complete when the loan was modified or made permanent.” In this case, at the front end closing, the Lender disbursed the amount necessary to acquire the lot and an initial draw to the Builder in the amount of ten percent of the construction contract price.
 

 
 *846
 
 The Lender, the Owner, and the Builder also entered into a Residential Construction Loan Agreement (the RCLA). The RCLA defined the rights, obligations, and duties among the Lender, the Owner, and the Builder. The RCLA established several conditions on the Lender’s obligation to make advances on the construction loan, including proof of insurance and that the RCLA must not be in default. The final advance under the RCLA represented the retainage fund. The Lender was not required to make the final advance until all conditions were satisfied, including the Owner’s execution of the loan modification for the permanent financing. The RCLA provided further that the Lender would “not be liable to any Builder ... for goods delivered or for services performed in or upon the Property or employed in construction of the Project or for any debt or claim against [the Owner] or others or against the Property or the Project.” Under the RCLA, the Lender had extensive remedies in the event of a default, including the right to “[m]ake no further [advances.”
 

 During 2006, the Builder was extremely busy. It had more than 400 homes under construction but employed no more than seven building superintendents. The building boom made it difficult to obtain the necessary subcontractors and materials to proceed with jobs under contract. Thus the Builder did not promptly begin construction of the Owner’s home as required by the RCLA. Once construction actually began, the Builder completed the construction of the home within four months and obtained a certificate of occupancy in May 2007. But by this time, the bottom had begun to drop out of the overheated housing market. Despite the Lender’s best efforts, the Owner refused to proceed to the end closing, and the loan went into default. As a result, the Lender continued to hold the final draw in the amount of $21,306.64 and refused to disburse these funds to the Builder.
 

 Then the litigation began. The Builder sued the Owner and the Lender for the balance due on the construction contract. The Owner filed a petition in bankruptcy, leaving the Builder and the Lender to litigate the issue of entitlement to the final draw between them. The Lender foreclosed its construction mortgage and obtained title to the property through the foreclosure process. Ultimately, the Lender sold the property to a third party for $123,000. The amount due to the Lender on its foreclosure judgment was $375,319.02. So the Lender sustained a loss of more than $250,000 on the transaction.
 

 II. THE TRIAL COURT’S RULING
 

 After a bench trial, the trial court ruled that it would be inequitable for the Lender to obtain title to the completed residence through the foreclosure process and also retain the final draw that had been designated to pay for the construction. Based on this ruling, the trial court awarded the Builder an equitable lien on the undis-bursed construction funds held by the Lender in the amount of $21,306.64. The trial court also awarded the Builder prejudgment interest in the amount of $4945.27. The trial court rejected the Lender’s defenses based on the provisions of the RCLA. The Lender’s appeal followed.
 

 III. THE STANDARD OF REVIEW
 

 The facts pertinent to the Builder’s claim to an equitable lien on the undis-bursed construction funds are essentially undisputed. We use the de novo standard to review a question of law arising from undisputed facts.
 
 See Kirton v. Fields,
 
 997 So.2d 349, 352 (Fla.2008) (citing
 
 D’An
 
 
 *847
 

 gelo v. Fitzmaurice,
 
 863 So.2d 311, 314 (Fla.2003)).
 

 IV. DISCUSSION
 

 The rationale for awarding an equitable lien on undisbursed construction funds to a contractor who has completed construction is unjust enrichment.
 
 See Blosam Contractors, Inc. v. Republic Mortg. Investors,
 
 353 So.2d 1225, 1227-28 (Fla. 2d DCA 1977);
 
 Morgen-Oswood & Assocs., Inc. of Fla. v. Cont’l Mortg. Investors,
 
 323 So.2d 684, 685 (Fla. 4th DCA 1975). “The ... elements ... of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant’s appreciation of the benefit, and the defendant’s acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.”
 
 Swindell v. Crowson,
 
 712 So.2d 1162, 1163 (Fla. 2d DCA 1998) (citing
 
 Ruck Bros. Brick v. Kellogg & Kimsey,
 
 668 So.2d 205 (Fla. 2d DCA 1995)).
 

 In this case, the Lender advanced funds approximating one hundred percent of the Owner’s cost to acquire the lot and build a residence on it. In becoming involved in such a project, the Builder and the Lender assumed the risk that, in the event of a slump in the local housing market, the Owner would be unable to make the payments due under the separate construction contract and unwilling or unable to proceed with the required end closing. Under such a scenario, a substantial financial loss was virtually inevitable for the Builder, the Lender, or both of them.
 

 The Builder and the Lender are both large, sophisticated business entities. In the RCLA, signed by the Builder, the parties allocated at least a portion of the obvious financial risks inherent in the project to the Builder. The Builder specifically agreed that the Lender would have no obligation to make the final advance until all loan conditions were satisfied, including the Owner’s execution of the loan modification for permanent financing. There is no dispute that this and other loan conditions were not satisfied.
 

 We understand that if the Builder does not receive the final draw, it will not be paid in full for completing the construction of the residence that was the security for the Owner’s obligation to the Lender. That said, when the Lender ultimately disposed of its security, it sustained a loss exceeding $250,000. Thus, to the extent that the Lender may have been enriched by the Builder’s completion of the residential construction, the allocation of the loss of the relatively small amount of the final draw to the Builder — in accordance with the parties’ written agreement — does not result in a windfall to the Lender that is unjust. Under these circumstances, the Builder did not establish that the Lender’s retention of the undisbursed construction funds was inequitable. We have also carefully reviewed the three reasons offered by the trial court for finding the provisions of the RCLA to be unenforceable, and we find them to be unpersuasive.
 

 V. CONCLUSION
 

 For the foregoing reasons, the trial court erred in granting the Builder an equitable lien on the undisbursed construction funds held by the Lender and in awarding the Builder prejudgment interest on the amount of the undisbursed funds. Accordingly, we reverse the final judgment and remand for the entry of judgment in favor of the Lender.
 

 Reversed and remanded.
 

 ALTENBERND and DAVIS, JJ., Concur.