THOMAS, J.,
concurring in part and dissenting in part.
I concur with the majority’s opinion affirming the trial court’s order as to ADC’s claims for breach of the Mentor-Protege Agreement and for breach of fiduciary duty. I also concur with the majority’s reversal of the trial court’s order finding that the Economic Loss Rule barred ADC’s fraudulent inducement claim, pursuant to our supreme court’s recent decision in Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc., 110 So.3d 399 (Fla.2013). I respectfully dissent, however, with the majority’s holding that there existed genuine issues of material fact concerning ADC’s claims for theft of trade secrets, breach of the teaming agreement, promissory estoppel, fraudulent inducement, and unjust enrichment.
*911 With respect to the trade secrets claim, in my view, ADC failed to establish that any of the trade secrets it alleges Appel-lees misappropriated were trade secrets at all. Rather, all of the information forming the basis of its claim was generally known or readily accessible to third parties. “Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection.” Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir.1998).
As for the rest of the claims, the underlying and fatal flaw in ADC’s case is that any damages arising from the alleged actions by Appellees are purely speculative and, thus, ADC’s claims are barred. “Damages cannot be based on speculation, conjecture or guesswork.” Swindell v. Crowson, 712 So.2d 1162, 1164 (Fla. 2d DCA 1998).
Here, ADC’s claims rest on two assumptions: First, that a proposal submitted jointly by HX5 and ADC, as opposed to InfoPro, would have resulted in the award of the contract; and second, pursuant to the alleged teaming agreement, that HX5 and ADC would have come to terms on a subcontract for ADC. Whether either or both of these would have occurred is the very definition of speculative. It is impossible to know whether the government employees responsible for assessing and awarding the contract would have looked just as favorably upon a proposal submitted by HX5 and ADC as it did upon HX5 and InfoPro. In fact, ADC’s own expert agreed that whether an HX5/ADC partnership would have been better positioned to obtain the contract was purely speculative.
Furthermore, the record is undisputed that, prior to the pre-solicitation for the contract at issue, the HX5 defendants Howard and Deckert, according to ADC’s own chief executive officer, resigned in lieu of being terminated. The chief executive officer also accused Appellee Howard of stealing from ADC. Yet these were the same people whom ADC now contends would have to come to an agreement to work together as primary and subcontractors. Whether they would have been able to overcome these differences and come to an agreement is, again, pure speculation. Thus, ADC was unable to establish the essential element of non-speculative damages to support its claims for breach of contract, promissory estoppel, or fraudulent inducement.
Finally, the majority has overlooked that the teaming agreement ADC alleges HX5 breached was nothing more than an unenforceable “agreement to agree.” A court cannot “afford a remedy for the breach of a promise to negotiate a contract, because there would be no way to determine whether the parties would have reached an agreement had they negotiated.” State, Dep’t of Corr. v. C & W Food Serv., Inc., 765 So.2d 728, 730 (Fla. 1st DCA 2000).
Here, the unsigned proposed teaming agreement provides that in the event the parties’ joint proposal resulted in a successful bid, the “successful Prime Contractor (i.e., HX5) will execute its best effort to negotiate a subcontract agreement that meets the intent of this Teaming Agreement within 30 days after the contract award.” ADC essentially acknowledged that this is an agreement to agree by citing various federal cases from around the country in which courts in other jurisdictions have found that such teaming agreements may constitute the basis for contractual liability where the prime contractor fails to enter into a subcontract with the subcontractor as anticipated in the teaming agreement. That may be, but this court is bound by its prior decision in C & W Food Services, which holds to the contrary.
*912 The clause here is very similar to that in C &W Food Services. In that matter, the contract included a renewal clause. 765 So.2d at 729. C & W sued when the Department unilaterally decided not to renew the contract without any negotiations. Id. “[T]he company asserted that the Department had breached its duty to negotiate renewal in good faith. This argument was based on the Department’s contracting manual, which incorporates a directive that the renewal clause of a procurement contract must include a provision for good faith negotiations.” Id. This court rejected this argument, explaining:
Whether the Department’s contracting manual is the equivalent of a rule is, in our view, immaterial. Even if the contract could be construed to incorporate the good faith negotiation requirement from the manual, C & W would be without a remedy. The obligation to negotiate renewal in good faith is, at most, an agreement to agree on something in the future. Because the parties have not yet agreed on the essential terms for the period in which the contract could be renewed, they do not have an enforceable contract for that period. An agreement to negotiate the terms of a renewal does not create a contractual right to renew.
Id. Consequently, this court affirmed the trial court’s summary judgment in favor of the Department. Id. at 731.
Similarly, here, the teaming agreement, in addition to including an agreement to submit a joint bid proposal, also includes an agreement to attempt to reach a subcontractor agreement with mutually acceptable terms, in the event the joint bid proposal proved successful. This is the essence of an agreement to agree on something in the future and, thus, is unenforceable under Florida law.
For the foregoing reasons, the trial court correctly entered summary judgment as to all of these claims. Even when viewing the evidence in a light most favorable to ADC, ADC was not entitled to relief as a matter of law. Consequently, I would also affirm the costs award.