DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MERLE WOOD & ASSOCIATES, INC.,**
Appellant,

v.

**DAVID FRAZER,**
Appellee.

No. 4D19-2238

[November 25, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE 11-013809 (13).

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, and Mike Pfundstein of Mike Pfundstein, P.A., Fort Lauderdale, for appellant.

Michael D. Braunstein and Alejandro Brito of Zarco Einhorn Salkowski & Brito, P.A., Miami, for appellee.

CONNER, J.

Appellant, Merle Wood & Associates, Inc. ("MWA"), appeals the final judgment in favor of its former salesperson, appellee David Frazer ("Frazer"), awarding unjust enrichment damages. MWA raises multiple grounds for reversal. We agree with one of the grounds, rendering discussion of the other grounds moot. Because there was no competent substantial evidence presented to the jury to support the award of damages for unjust enrichment, we reverse the final judgment and remand with directions for the trial court to enter a final judgment in favor of MWA.

*Background*

Frazer sued MWA for breach of contract and unjust enrichment damages in connection with the sale of a yacht named *Secret.*

MWA is a yacht brokerage firm. Salespersons at MWA either work in the "production and custom yacht" division or the "superyacht" division. The production and custom yacht division handles the sale of yachts from

30 to 150 feet in length. The superyacht division handles yachts longer than 150 feet. MWA has a policy that salespersons who work in the production and custom yacht division may not attempt to sell a superyacht without the permission of MWA's principal, Merle Wood ("Wood").

MWA salespersons do not receive salaries; instead, they receive commissions. When a MWA salesperson participates in a sale, MWA receives a sales commission and pays a portion of that commission to the participating salesperson. The commission split is generally even, fifty-fifty, but a salesperson's share can be greater than fifty percent when the sale price reaches certain levels. This is known as a sliding scale commission split. However, Wood testified that when a salesperson in the production and custom yacht division is involved in the sale of a superyacht, the fifty-fifty split of commission is, and not the sliding scale.

Frazer worked in the production and custom yacht division of MWA for several years. Prior to working for MWA, Frazer worked at a different yacht brokerage firm. A year before switching to MWA, Frazer had the opportunity to meet and briefly have contact with the eventual purchaser ("the Purchaser") of *Secret*. A year before Frazer met the Purchaser at the other brokerage firm, the Purchaser became aware of MWA and sent an inquiry to MWA because he was interested in buying a yacht. Nothing came of the inquiry.

After joining MWA, Frazer continued trying to sell a yacht to the Purchaser, sending numerous solicitations with information on a variety of vessels, including superyachts. After learning of Frazer's interest in the Purchaser as a potential buyer of a superyacht, MWA's principal, Wood, asked Frazer to set up a meeting with the Purchaser. Frazer arranged and attended the meeting between Wood and the Purchaser, which was brief. Afterwards, Wood told Frazer he could continue to solicit the Purchaser, even though it appeared the Purchaser was not interested in purchasing a yacht through MWA at that time.

Frazer kept trying to sell the Purchaser a yacht. However, in May 2010, MWA terminated its relationship with Frazer. A month or two after his termination, Frazer learned that MWA's superyacht manager, who was hired a month before Frazer was terminated, had negotiated the sale of *Secret* to the Purchaser.

MWA's newly hired superyacht manager was a naval architect and marine engineer who had previously worked for the yacht builder which built *Secret*. Prior to *Secret* being built, the superyacht manager worked with the Purchaser over several years on several designs for a custom

2

yacht to be built by the yacht builder, but the Purchaser never came to an agreement to purchase any of the proposed designs. In working with a different customer while employed by the yacht builder, MWA's superyacht manager was involved in the design and construction of *Secret*, as well as the sale of *Secret* to its original owner. As a result of the superyacht manager's prior work with the Purchaser, he was able to successfully persuade the Purchaser to buy *Secret* after being employed by MWA. Once the sales contract was signed, it took six months to close the sale. The sale resulted in a sales commission in excess of one million dollars.

Frazer never spoke to MWA's superyacht manager during the short period they both worked at MWA. Frazer never mentioned *Secret* to the Purchaser, despite the fact that it was for sale at least a year before Frazer was terminated from MWA. He also did not do any work to assist with consummating the sale of *Secret* between the date the sales contract was signed and the sale closed.

Nevertheless, Frazer sued MWA for failure to pay him a commission. The operative complaint proceeded to a jury trial on two counts, one for breach of an oral agreement to pay a commission and the other for unjust enrichment. The jury rendered a verdict in favor of MWA on the breach of contract count, but against MWA on the unjust enrichment count, awarding Frazer $300,000 in damages. MWA moved for remittitur, contending that no evidence supported the amount awarded for unjust enrichment and a new trial on damages should be granted. The trial court granted the motion for remittitur after determining the damages should be reduced to $120,000. Frazer rejected the reduced award proposed by the trial court, so the case proceeded to a new trial on damages.

At the second trial, Frazer called three witnesses: himself, Wood, and an accountant, Carl Fedde ("Fedde"). Fedde testified that he had been asked to review testimony and ascertain the commission rate structure that would have been in place involving the sale of *Secret*. When asked whether he computed any damages in this case, Fedde reiterated that he was engaged to ascertain a range of commission rates that were possible at MWA as it related to *Secret*. Fedde clarified that the rates he had derived pertained to the various commission splits between MWA and a salesperson. Additional evidence and various arguments presented during the second trial are discussed more fully in the analysis below.

The trial court denied MWA's motions for directed verdict. The second jury awarded Frazer damages in the amount of $184,863.60, which mathematically is precisely thirty percent of the portion of the sales commission paid to the superyacht manager. MWA filed renewed motions

for judgment as a matter of law, remittitur, and new trial, all of which were denied by the trial court without a hearing and without Frazer filing anything in opposition. MWA gave notice of appeal.

*Appellate Analysis*

We review denials of motions for directed verdict de novo. *Fina v. Hennarichs*, 19 So. 3d 1081, 1084 (Fla. 4th DCA 2009). "A trial court's ruling on a motion for judgment in accordance with a prior motion for directed verdict is also reviewed de novo." *Philip Morris USA, Inc. v. Barbanell*, 100 So. 3d 152, 157 (Fla. 4th DCA 2012).

"Damages for unjust enrichment may be valued based on either (1) the market value of the services; or (2) the value of the services to the party unjustly enriched." *Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 512 (Fla. 3d DCA 2018).

> Because unjust enrichment damages are economic damages, the amount of damages must be *measurable and quantifiable*: "[i]t has long been accepted in Florida that a party claiming economic losses must produce evidence justifying a *definite amount.*" *United Auto. Ins. Co. v. Colon*, 990 So. 2d 1246, 1248 (Fla. 4th DCA 2008). "*Economic damages may not be founded on jury speculation or guesswork and must rest on some reasonable factual basis.*" *Id.* *See Swindell v. Crowson*, 712 So. 2d 1162, 1164 (Fla. 2d DCA 1998) ("Damages cannot be based on speculation, conjecture or guesswork.").

*Id.* at 512-13 (alteration in original) (emphases added).

Pretrial, during trial, and post-trial, MWA argued that it was entitled to a judgment in its favor as a matter of law because Frazer failed to present competent substantial evidence of the value of any benefit conferred upon and improperly retained by MWA. In short, MWA maintained that Frazer failed to prove a definite amount of measurable and quantifiable damages to support an award for unjust enrichment.

In support of its position, MWA specifically argued that Frazer offered no proof from which the jury could determine the value of any benefit or services which Frazer may have provided in the sale of *Secret*. As to the portion of the commission paid to the superyacht manager, MWA retained no benefit. As to the portion of the commission MWA itself retained, MWA argued a commission agreement calculation could not be a basis for an unjust enrichment award because Frazer was never entitled to the house

4

commission or to the full commission. Therefore, in order to justify an award for unjust enrichment, MWA argued that there had to be some quantifiable measure to allow the jury to identify the service provided and its worth. However, Frazer presented no evidence to that effect. MWA pointed out that the commission split ranges provided by Fedde were all premised upon the full commission value agreed to by the seller and MWA, and at no point did Fedde divide or apportion any part of the sales commission to reflect Frazer's contribution. Thus, MWA argued that Frazer failed to provide the jury with a number to compensate him for a benefit he provided, and that all that had been presented by Frazer were the various possible full commission values. MWA noted that an example of evidence of Frazer's value could have been something like a portion of the superyacht manager's commission. However, MWA noted that there was no evidence provided to give a sense of proportion between what actually happened in selling this particular boat and anything Frazer did. MWA's position was that to the extent Frazer conferred any benefit, there was no evidence of the value of the benefit.

Opposing MWA's position, Frazer argued that the benefit he conferred to MWA was the introduction of the Purchaser to MWA, as well as Frazer's relentless pursuit of the Purchaser to purchase a vessel. In response to MWA's argument that Fedde made it very clear that he made no determination about what Frazer should be paid for whatever he did, Frazer's counsel told the jury that Fedde *did not compute the value of Frazer's services because that was the jury's job.* In rebuttal closing, Frazer noted that MWA's suggestion that Frazer's work should be valued in proportion to the superyacht manager's work was "guesswork" and "not evidence."

MWA correctly emphasizes on appeal that Fedde candidly admitted he did not attempt to determine the value of the benefit Frazer conferred on MWA. At most, Fedde agreed on direct examination that the commission paid to a salesperson represented the *value* of the salesperson's services that he or she is performing for the brokerage. However, Fedde admitted on cross examination that he did not do anything to determine what Frazer would be entitled to *as part of any commission.* Fedde further admitted he *did not do any analysis as to the value of the services that may have been provided by Frazer that may have contributed to the sale of Secret,* and that he merely calculated various commission rate splits between MWA and *a sales agent.* Notably, despite his testimony on direct examination that the commission paid to a salesperson represented the *value* of the salesperson's services, at the conclusion of Fedde's re-cross examination, he agreed with MWA's counsel that commissions are not based on "value," but on an agreement of how much is going to be paid irrespective of how

5

much time and effort will be needed to sell the product. Because Fedde did not determine the value of any services Frazer performed or any value improperly retained by MWA from such services, we agree that Frazer failed to present competent substantial evidence of unjust enrichment damages.

Frazer himself only testified as to his anticipated profits from the transaction, but offered no testimony computing the value of the benefit conferred. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (reversing unjust enrichment award where "plaintiffs only presented evidence of the money they hoped to receive" from a transaction and offered "no evidence of the value of the benefit conferred.").

The Third District's opinion in *Alvarez* is instructive. In *Alvarez*, All Star, a boxing promoter, provided Alvarez with promotional services for a 15-month period, after which Alvarez utilized a different company for such services. *Alvarez*, 258 So. 3d at 509-10. The change prompted All Star to file suit against Alvarez for unjust enrichment and breach of contract. *Id.* at 510. Similar to the instant case, All Star used Fedde as an expert for damages. *Id.* Also similar to the instant case, Fedde did not present evidence of a specific dollar figure to reflect the amount of All Star's unjust enrichment damages. *Id.* In contrast to the instant case, All Star's theory was that the unjust enrichment damages should be a percentage of Alvarez's future earnings for all or part of his lifetime. *Id.* But similar to this case, Fedde never explained what *specific percentage* should be used in the calculation. *Id.* Instead, Fedde calculated the boxer's earnings from 2010 to 2015 as $24 million and projected his earnings from 2016 to 2026 as $135 million. *Id.* at 511. However,

> Fedde never testified as to how Alvarez's earnings could be used to calculate the amount that Alvarez was unjustly enriched by All Star's services. In other words, Fedde never testified how a particular percentage, range, or portion of Alvarez's earnings during all or any part of the 16-year period from 2010 to 2026 could be attributed to the promotional services performed by All Star during the 15-month period from September 2008 to December 2009.

*Id.* at 511-12. The jury rejected the breach of contract claim but determined Alvarez was unjustly enriched by All Star's services and awarded $8.5 million in damages. *Id.* at 512.

On appeal, the Third District concluded that the damages award was "speculative and . . . not supported by substantial competent evidence."

6

*Id.* at 513. It explained that Fedde had used unreliable methods to calculate the boxer's earnings and that the assumption of a 50/50 split between the boxer and his promoter was also speculative. *Id.* More important to our analysis, the Third District reasoned that even if those earnings figures were not speculative, "the verdict is still not supported by substantial competent evidence because All Star offered no competent way to convert these numbers to $8.5 million in damages for unjust enrichment." *Id.* Attempting to explain the jury's method on appeal, All Star focused on only one of the earnings figures, the $24 million, and suggested that the jury could have arrived at the damages award by allocating roughly one third of this one earnings figure to the promoter's services. *Id.* at 513-14. However, the Third District rejected this argument as unsupported by any evidence of such allocation:

> The problem we have with this argument is the lack of evidence for the quantification: no expert testified to one-third; no other evidence supported one-third; and on appeal, no explanation is proven for one-third. *The total absence of any evidence or explanation on how the $8.5 million was derived from the $24 million is fatal.* Even assuming earnings could be used to establish unjust enrichment, *they could only be used if the plaintiff provided evidence establishing a fact-based chain of reasoning to allocate or quantify to some degree the plaintiff's contribution to those earnings.* Perhaps this need not be done with mathematical certainty, but it cannot be based upon an unknown, subjective, unexplainable, and therefore unreviewable method as All Star proposes.

*Id.* at 514 (emphases added). Ultimately, the Third District concluded that "the total absence of any evidence (by expert opinion or otherwise) or logical explanation describing how the jury could have reached the allocation that one-third of the 2010-2015 earnings were generated by services provided in 2008-2009 means the allocation is not supported by substantial competent evidence." *Id.* It reversed the judgment, remanding for the trial court to vacate the final judgment, reconsider the motion for remittitur and reenter a judgment if there was evidence of the value of the promoter's expenditures for services in the existing record, or if not, for a judgment in favor of Alvarez. *Id.* at 515.

Similar to *Alvarez*, in this case Fedde calculated figures that he did not tie to the amount MWA was supposedly unjustly enriched and that to which Frazer was entitled. Nor did Frazer give any guidance for the jury through evidence or even closing argument on how to utilize Fedde's testimony to arrive at a damages finding. Like in *Alvarez*, here the jury

reached a result outside of Fedde's figures. Unlike *Alvarez*, there was no evidence of Fraser's expenditures for any services he rendered. Thus, we reverse the final judgment and remand the case for the trial court to enter judgment in favor of MWA for failure to prove damages.

*Reversed and remanded with instructions.*

GERBER and KLINGENSMITH, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**