DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROSE RENDA,** individually, and as Personal Representative of the Estate of **GUISEPPE RENDA** and as Trustee of **THE GUISEPPE RENDA TRUST, RELIABLE LAND HOLDINGS I, LLC, RELIABLE LAND HOLDINGS II, LLC, RELIABLE LAND HOLDINGS III, LLC,** and **RELIABLE LAND HOLDINGS IV, LLC,**
Appellants/cross-appellees,

v.

**JOSEPH PRICE,**
Appellee/cross-appellant.

No. 4D21-534

[July 27, 2022]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Barbara W. Bronis, Judge; L.T. Case No. 562017CA000595.

Rick Kozell of Law Office of Rick Kozell, Stuart, for appellants/cross-appellees.

Andrew A. Harris and Grace Mackey Streicher of Harris Appeals, P.A., Palm Beach Gardens, and Alfred R. Bell, Jr., of Steiner, Greene & Feiner, Port St. Lucie, for appellee/cross-appellant.

KLINGENSMITH, C.J.

Appellant Rose Renda, in her individual and representative capacities, appeals the trial court's final judgment ordering an equitable lien against her homestead in favor of appellee Joseph Price and ordering the seizure and sale of certain commercial properties. Price also cross-appeals the trial court rulings preventing his foreclosure of the equitable lien on Mrs. Renda's homestead and sustaining Mrs. Renda's attorney-client privilege objections. We affirm on all issues raised in both the main appeal and cross-appeal without comment except for one: on Price's cross appeal, we reverse the trial court's finding that Price could not foreclose his equitable lien and remand for further proceedings.

In 2016, Price was injured in a motor vehicle accident involving an employee of Reliable Towing and Storage, Inc. ("the Debtor"). Price sued for damages, and because the Debtor did not respond to the lawsuit, the trial court entered default judgment against it. Following the default, the trial court conducted a jury trial on damages, resulting in a judgment of $10,000,000.00 in Price's favor.

Giuseppe Renda, Mrs. Renda's late husband, owned and managed the Debtor. The Debtor held two life insurance policies on Mr. Renda, one valued at $450,000.00 from AIG and one valued at $70,000.00 from Northwestern Mutual. During the pendency of the Price lawsuit, the Debtor, through the actions of Mr. Renda, changed the beneficiary of the Northwestern insurance policy to Mrs. Renda. The Debtor also attempted to change the beneficiary of the AIG insurance policy to Mrs. Renda; however, the transfer forms were not properly signed.

During the pendency of the proceedings below, the Debtor also transferred possession and ownership of four parcels of commercial real property to four single-purpose limited liability companies: Reliable Land Holdings I through IV. Mrs. Renda later claimed that even though she was listed as the trustee for all four land entities, she had no prior knowledge or understanding of these transfers because her "husband was the one who took care of that."

Following Mr. Renda's death in early 2018, the Northwestern insurance policy paid out $70,780.45 directly to Mrs. Renda. The AIG insurance policy paid out $453,620.06 to Reliable Towing and Transportation, Inc., a company now owned and operated by Mrs. Renda, which she testified was the same company as the Debtor. Mrs. Renda transferred the AIG policy payment to her personal bank account. The Debtor, under the direction of Mrs. Renda, sold all its assets to a third party and received two payments of $59,793.53 and $12,000.00. Mrs. Renda then used the monies from the two insurance policies along with the larger check from the sale of the Debtor's assets to purchase a new home that became her homestead property.

After obtaining his judgment against the Debtor, Price moved to commence proceedings supplementary pursuant to section 56.29, Florida Statutes (2018), to collect on it. Price attached a complaint for fraudulent transfer to one of his motions that also outlined his claim for equitable and other relief pursuant to the Fraudulent Uniform Transfer Act ("FUTA") under both chapter 726 and section 56.29. Even though Price claimed he was only "seeking to void the transfer of certain parcels of real estate and certain funds" directly traceable to Mrs. Renda's purchase of the

homestead property, the trial court pointed out that because Price initiated the proceedings under section 56.29 and not chapter 726, it could not enter a money judgment. The trial court granted Price's motions and issued seventeen notices to appear to assets that Price sought to seize, including Mrs. Renda's homestead property, the four parcels of sold commercial properties, and to Mrs. Renda as the trustee of her late husband's trust and as the personal representative of his Estate.

After evidentiary hearings, the trial court entered final judgment voiding the sale of the four commercial properties, ordering the sheriff to seize and auction those properties, and imposing an equitable lien of $550,000.00 on the Renda homestead based on *Havoco of America Ltd. v. Hill*, 790 So. 2d 1018 (Fla. 2001). In so ordering, the trial court found that Mrs. Renda's conduct met the "badges of fraud" as enumerated by chapter 726 and that the transfer of funds from the Debtor to her "was made with the intent to defraud creditors," citing *General Electric Co. v. Churly International, LLC*, 118 So. 3d 325, 327 (Fla. 3d DCA 2013). The trial court also found the badges of fraud applied to Mrs. Renda because she was "[a]t all times material hereto . . . an insider, owner, spouse of the owner and/or officer of the judgment debtor and these related impleaded entities." However, the trial court would not permit foreclosure on the equitable lien while the home was Mrs. Renda's homestead.

On his cross-appeal, Price argues Florida law permits the foreclosure of an equitable lien, even on a homestead property, in certain circumstances such as those presented here. Mrs. Renda counters that an equitable lien could not be imposed on her homestead because homestead properties are exempt from fraudulent transfer claims. On this point, we agree with Price.

"We use the de novo standard to review a question of law arising from undisputed facts." *CTX Mortg. Co., LLC v. Advantage Builders of Am., Inc.*, 47 So. 3d 844, 846 (Fla. 2d DCA 2010) (citing *Kirton v. Fields*, 997 So. 2d 349, 352 (Fla. 2008)). Under *Havoco*, equitable principles reach beyond the literal language of the three homestead exceptions outlined in Article X, section 4 of the Florida Constitution "only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." 790 So. 2d at 1028. It is well-settled under Florida law that homestead protections "cannot be employed as a shield and defense after fraudulently imposing on others." *Jones v. Carpenter*, 106 So. 127, 130 (Fla. 1925). As a result, "[a]n equitable lien may be foreclosed against homestead property purchased with funds obtained by fraud." *Sweeteners Plus, Inc. v. Glob. Supply Source, Inc.*, No. 6:11-cv-

3

1799-Orl-28DAB, 2013 WL 6890857, at *8 (M.D. Fla. Dec. 31, 2013) (citing *Babbit Elecs. v. Dynascan Corp.*, 915 F. Supp. 335, 338 (S.D. Fla. 1995)).

Our court has also allowed foreclosure on equitable liens imposed on a homestead to prevent unjust enrichment. *See Flinn v. Doty*, 214 So. 3d 683, 684 (Fla. 4th DCA 2017) (citing *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993)) (finding the trial court did not err in foreclosing on the equitable lien of $206,000.00 because it was imposed to prevent unjust enrichment). "[C]ourts have recognized an exception to the homestead protection when the property was acquired with funds generated by fraudulent activity, and a constructive trust or equitable lien is necessary to prevent unjust enrichment." *Sweeteners Plus*, 2013 WL 6890857, at *8.

Here, the trial court erred in refusing to allow Price to foreclose on the equitable lien on Mrs. Renda's homestead. Although the trial court made the decision to prevent foreclosure of the lien based on *Havoco*, that case does not prohibit foreclosure in these circumstances, even on a homestead property, where such property was purchased with funds obtained by fraud. To disallow Price's foreclosure on the homestead purchased with funds obtained by fraud would, in essence, unjustly enrich Mrs. Renda. *See Flinn*, 214 So. 3d at 684; *Fishbein*, 619 So. 2d at 270.

This concept is not new. Federal courts in both the Middle and Southern Districts of Florida have also specifically held that when a homestead property is purchased with funds obtained by fraud, as the trial court found that Mrs. Renda's homestead was, then foreclosure on that homestead is allowed. *See Sweeteners Plus*, 2013 WL 6890857, at *8; *Babbit Elecs.*, 915 F. Supp. at 338.

Therefore, we reverse the court's order disallowing foreclosure on the equitable lien against Mrs. Renda's homestead property and remand for further proceedings. We affirm on all other issues raised in the appeal and cross-appeal.

*Affirmed in part, reversed in part, and remand for further proceedings.*

CIKLIN and CONNER, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**

4